1    Matthew R. Bainer, Esq. (SBN 220972)
     **THE BAINER LAW FIRM**
2    1901 Harrison St., Suite 1100
     Oakland, California 94612
3    Telephone:    (510) 922-1802
     Facsimile:    (510) 844-7701
4    mbainer@bainerlawfirm.com

5    Attorneys for Plaintiffs
     (additional counsel listed on following page)
6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10

11   JOSHUA GARCIA, SERA GARCIA,          Case No.:  17-cv-03069-RS
     RAYMOND SANDOVAL, KELLY
     SMITH, AND JENNIFER WILSON,
12   individually, and on behalf of other    **NOTICE OF MOTION AND MOTION FOR**
     members of the general public similarly **FINAL APPROVAL OF CLASS ACTION**
13   situated, and as aggrieved employees    **SETTLEMENT; MEMORANDUM OF**
     pursuant to the Private Attorneys General **POINTS AND AUTHORITIES**
14   Act ("PAGA"),

15            Plaintiffs,                    Date:        June 6, 2019
                                            Time:        1:30 p.m.
16        vs.                               Courtroom:    3

17   HMS HOST, USA, INC., a Delaware
     corporation; and DOES 1 through 100,
18   inclusive,

19            Defendants.

20

21

22

23

24

25

26

27

28

1  NICHOLAS J. SCARDIGLI SBN 249947
   WILLIAM J. GORHAM III SBN 151773
   ROBERT J. WASSERMAN SBN 258538
2  JOHN P. BRISCOE SBN 273690
   **MAYALL HURLEY**
3  A Professional Corporation
   2453 Grand Canal Boulevard
4  Stockton, California 95207
   Telephone (209) 477-3833
5  Facsimile (209) 473-4818

6  MATTHEW J. MATERN, SBN 159798
   MATTHEW W. GORDON, SBN 267971
7  BRAUNSON C. VIRJEE, SBN 295325
   **MATERN LAW GROUP, PC**
8  1230 Rosecrans Avenue, Suite 200
   Manhattan Beach, CA 90266
9  Telephone: 310.531.1900
   Facsimile: 310.531.1901
10 Emails: mmatern@maternlawgroup.com
    mgordon@maternlawgroup.com
11

12 KASHIF HAQUE, SBN 218672
   SAMUEL A. WONG, SBN 217104
13 JESSICA L. CAMPBELL, SBN 280626
   SHELLY SONG, SBN 312036
14 **AEGIS LAW FIRM, PC**
   9811 Irvine Center Drive, Suite 100
15 Irvine, California 92618
   Telephone: 949.379.6250
16 Facsimile: 949.379.6251

17 TODD M. FRIEDMAN, SBN 216752
   ADRIAN R. BACON, SBN 280332
18 **LAW OFFICES OF TODD M. FRIEDMAN, P.C**.
   21550 Oxnard Street, Suite 780
19 Woodland Hills, CA 91367
   Telephone: 877.206.4741
20 Facsimile: 866.633.0228
   Email: tfriedman@toddflaw.com
21      abacon@toddflaw.com

22 Margaret Rosenthal, SBN 147501
   Shareef Farag, SBN 251650
23 Nicholas D. Poper, SBN 293900
   **BAKER & HOSTETLER LLP**
24 11601 Wilshire Boulevard, Suite 1400
   Los Angeles, CA  90025-0509
25 Telephone:    310.820.8800
   Facsimile:    310.820.8859
26 Email:        mrosenthal@bakerlaw.com
                 sfarag@bakerlaw.com
27               npoper@bakerlaw.com

28

1

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

2

**PLEASE TAKE NOTICE** that on June 6, 2019 at 1:30 p.m., or as soon thereafter as counsel

3

may be heard, in Courtroom 3 of the above-captioned court, located at 450 Golden Gate Avenue, San

4

Francisco, CA 94102, the honorable Richard Seeborg presiding, Plaintiffs will, and hereby do, move this

5

Court for entry of an order and judgment granting final approval of the class action settlement and all

6

agreed-upon terms therein.  This Motion, unopposed by Defendant Host International, Inc., seeks final

7

approval of: (1) the Joint Stipulation of Class Action Settlement and Release; (2) settlement payments to

8

Participating Class Members; and (3) and costs/expenses to the settlement administrator, CPT Group,

9

Inc.

10

This Motion is based upon:  (1) this Notice of Motion and Motion; (2) the Memorandum of

11

Points and Authorities in Support of Motion for Final Approval of Class Action Settlement; (3) the

12

Declaration of Matthew Bainer; (4) the Declaration of John P. Briscoe; (5) the [Proposed] Order Granting

13

Final Approval of the Class Action Settlement and Judgment; (6) the records, pleadings, and papers filed

14

in this action; and (7) upon such other documentary and/or oral evidence as may be presented to the

15

Court at the hearing.

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.    INTRODUCTION .......................................................................................................... 1

II.   FACTS AND PROCEDURE ....................................................................................... 2

      A.    Brief Overview of the Litigation ................................................................... 2

      B.    Plaintiffs Actively Engaged in the Discovery Process ................................. 2

      C.    The Parties Settled After a Full Day of Arm's Length Negotiations at a Private
            Mediation ........................................................................................................ 3

      D.    The Proposed Settlement Fully Resolves Plaintiffs' Claims ........................ 4

            1.    Composition of the Settlement Class ................................................. 5

            2.    Settlement Consideration ................................................................... 5

            3.    Formula for Calculating Settlement Payments ................................. 5

            4.    Release by the Settlement Class ........................................................ 7

      E.    The Notice and Settlement Administration Process Were Completed Pursuant to the
            Court Order ..................................................................................................... 7

III.  ARGUMENT ............................................................................................................... 8

      A.    The Standard for Final Approval Has Been Met ........................................... 8

      B.    The Settlement Was Achieved After Evaluating the Strengths of Plaintiffs' Case and
            the Risks, Expense, Complexity, and Likely Duration of Further Litigation ........................ 10

      C.    The Settlement Was Reached through Arm's-Length Bargaining in Which All Parties
            Were Represented by Experienced Counsel .................................................. 12

      D.    The Settlement Was Negotiated after Plaintiffs' Counsel Conducted a Thorough
            Investigation of the Factual and Legal Issues ............................................... 12

      E.    The Settlement Class Has Responded Positively to the Settlement ............. 12

      F.    The Requested Payment to the Settlement Administrator Is Reasonable and Should
            Receive Final Approval .................................................................................. 13

IV.   CONCLUSION ............................................................................................................ 14

1

**TABLE OF AUTHORITIES**

2

3  **FEDERAL CASES**

4  *Blackwell v. Skywest Airlines, Inc.*, 245 F.R.D. 453 (S.D. Cal. 2007)..........................................10

5  *Brown v. Fed. Express Corp.*, 249 F.R.D. 580 (C.D. Cal. 2008) ................................................10

6  *Churchill Village, LLC v. General Electric*, 361 F.3d 566 (9th Cir. 2004)................................12

7  *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ......................................................11

8  *Gonzalez v. Officemax N. Am.*, 2012 WL 5473764 (C.D. Cal. Nov. 5, 2012) .........................10

9  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)............................................................8

10  *Hopson v. Hanesbrands Inc.*, Case No. 08-00844, 2009 U.S. Dist. LEXIS 33900 (N.D.

11      Cal. Apr. 3, 2009)............................................................................................................................13

12  *In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 U.S. Dist.

13      LEXIS 108195 (N.D. Cal. Nov. 5, 2008) ................................................................................11

14  *In re Atmel Corp. Derivative Litig.*, No. C 06-4592 JF (HRL), 2010 U.S. Dist. LEXIS

15      145551 (N.D. Cal. June 25, 2008)..............................................................................................11

16  *Jimenez v. Allstate Ins. Co.*, 2012 WL 1366052 (C.D. Cal. Apr. 18, 2012) ...........................10

17  *Kenny v. Supercuts, Inc.*, 252 F.R.D. 641 (N.D. Cal. 2008)........................................................10

18  *Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003)..............................................................................8

19  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) .................................8

20  *Ordonez v. Radio Shack, Inc.*, 2013 U.S. Dist. LEXIS 7868 (C.D. Cal. Jan. 17, 2013) ............10

21  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009)....................................................8

22

23  **STATE CASES**

24  *7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135 (2000) ....................12

25  *Aguiar v. Cintas Corp. No. 2*, 144 Cal. App. 4th 121 (2006)........................................................9

26  *Brinker Restaurant Corp. v. Super. Ct.*, 53 Cal. 4th 1004 (2012)................................................9

27  *Gentry v. Super. Ct. (Circuit City Stores)*, 42 Cal. 4th 443 (2007)...............................................9

28

*Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th 1286 (2010) ................................................................ 9

*Nordstrom Com. Cases*, 186 Cal. App. 4th 576 (2010) ................................................................ 13

*Richmond v. Dart Industries, Inc.*, 29 Cal. 3d 462 (1981) ................................................................ 9

*Sav-On Drug Stores, Inc. v. Super. Ct. (Rocher)*, 34 Cal. 4th 319 (2004) ................................................................ 9

*Smith v. Super. Ct.*, 39 Cal. 4th 77 (2006) ................................................................ 9

**FEDERAL STATUTES**

Fed. R. Civ. P. 23(e) ................................................................ 7

**SECONDARY AUTHORITIES**

Manual for Complex Litigation (4th ed. 2004) ................................................................ 7, 8

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**INTRODUCTION**

3

On January 29, 2019, the Court granted preliminary approval of the Joint Stipulation of Class

4

Action Settlement and Release[1] and approved distribution of the Notice of Class Action Settlement

5

("Class Notice") to all Class Members.  Class Members were given 30 days to submit Requests for

6

Exclusion or objections to the Settlement ("Response Deadline").  As of the date of this filing, Plaintiffs

7

are pleased to report that:  (1) not a single Class Member objected to the Settlement; (2) only 3 Class

8

Member has  opted out of the Settlement Class; and (3) the average payment to Participating Class

9

Members is expected to be approximately $168.11, and the highest is approximately $1046.86.

10

(Declaration of Chris Pinkus ["Pinkus Decl."] ¶ 16)

11

Plaintiffs now seek final approval of this Settlement with Defendant Host International, Inc.,

12

("Defendant" or "Host") (collectively with Plaintiffs, the "Parties").  Defendant does not oppose this

13

Motion for Final Approval of Class Action Settlement.  The basic terms of the Settlement provide for the

14

following:

15

16

    (1)        A Settlement Class defined as:  non-exempt employees of Defendant in California at any time from April 25, 2013 through January 29, 2019.

17

    (2)        A Class Settlement Amount of $2,200,000.  The Class Settlement Amount includes:

18

19

20

21

          (a)        A Net Settlement Amount of approximately $1,350,629.64 ($2,200,000 of the Class Settlement Amount minus the requested Attorneys' Fees and Costs, Settlement Administration Costs, requested Class Representative Enhancement Payments and payment to the LWDA), which will be allocated to participating Class Members on a pro-rata basis according to their dates of employment and the number of weeks that each Class Member worked during the Class Period ;

22

23

          (b)        Attorneys' fees of up to one-third of the Class Settlement Amount, or $733,333, and $38,037.36 for litigation costs and expenses;

24

25

          (c)        Settlement Administration Costs of $35,000, to be paid to the jointly selected class action settlement administrator Rust Consulting ("Rust")[2];

26

27

---

[1] Hereinafter, "Settlement" or "Settlement Agreement."  Unless indicated otherwise, all capitalized terms used herein have the same meaning as those defined by the Settlement Agreement.
[2] *See* Exhibit "A" to Bainer Decl.

28

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

(d)    Class Representative Enhancement Payments of up to $5,000 each to Plaintiffs Joshua Garcia, Sera Garcia, Kelly Smith and Jennifer Wilson and up to $8,000 to Plaintiff Raymond Sandoval.

(e)    A payment to the LWDA pursuant to the Private Attorney General Act of $15,000.

An objective evaluation of the Settlement confirms that the relief negotiated on the class' behalf is fair, reasonable, and valuable.  The Parties negotiated the Settlement at arm's length with guidance from experienced class action employment mediator David A. Rotman, Esq..  The relief offered by the Settlement is particularly notable when viewed against the difficulties encountered by plaintiffs pursuing wage and hour cases (*see infra*).  Indeed, the proposed relief is arguably superior to the relief that the class might have obtained after additional costly litigation because by settling now, rather than proceeding to trial, Class Members will not have to wait (possibly years) for relief, nor will they have to bear the risk of class certification being denied or of Defendants prevailing at trial.

Accordingly, given the Settlement's favorable terms and the manner in which these terms were negotiated and received by Class Members, Plaintiffs respectfully request that the Court grant this Motion for Final Approval of the Settlement Agreement and retain jurisdiction to enforce the Settlement.

## I.    FACTS AND PROCEDURE

### A.    Brief Overview of the Litigation

This Settlement provides for the global resolution of this action and four related actions. Three of those actions, *Kelly Smith v. Host International Inc*., Fresno County Superior Court Case No. 17CECG03397; *Jennifer Wilson v. Host International, Inc.*, et al., Los Angeles County Superior Court Case No. BC684110 and *Sera Garcia v. Host International, Inc.*, et al., San Diego County Superior Court Case No. 37-2017-00046403 brought causes of action based primarily on, and overlapping with the causes of action and theories of recovery plead herein. All three of the *Smith*, *Wilson* and *Garcia* actions were stipulated to be stayed pending the resolution of this action. (Bainer Decl. ¶2) The fourth related action, *Sandoval v. Host International, Inc.* Fresno County Superior Court Case No. 17CECG00374 ("*Sandoval*") was filed and litigated independently of this action for a single cause of action for Failure to Provide Itemized Wage Statements pursuant to Cal. Labor Code § 226. (Briscoe Decl. ¶¶ 1-3)

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Following a global mediation on March 15, 2018 and subsequently resulting global settlement agreement, discussed *infra*, the parties to this action and all related cases agreed to seek leave to amend the Complaint herein to add all parties to the related action, and all causes of action brought thereby, to this action such that approval of the global settlement agreement could be sought in one proceeding in front of this Court. On November 26, 2018 this Court issued its order granting Plaintiffs leave to file their Second Amended Complaint. That pleading adds all parties to the settlement as parties to this action and alleges violations of (1) unpaid overtime (both under California state and federal statutes); (2) unpaid minimum wages; (3) failure to provide meal periods; (4) failure to authorize and permit rest periods; (5) failure to timely pay wages; (6) failure to pay reporting time pay; (7) failure to indemnify for incurred business expenses; (8) failure to provide accurate wage statements; (9) failure to maintain required business records; (10) the Private Attorney General Act and (11) unfair competition.

Plaintiffs' claims flow from the following core factual allegations:

- Host did not maintain accurate records or provide accurate wage statements to its employees.

- Host did not consistently provide non-exempt employees with a timely meal or rest breaks, as required under California Law.

- Host required employees to perform additional work tasks while off-the-clock, incur unreimbursed business expenses and sent employees home without pay when those employees reported to their assigned post, all resulting in unpaid work time.

- As a derivative result of the above allegations, Host failed to pay all terminated employees the correct amount of wages earned.

**B.    Plaintiffs Actively Engaged in the Discovery Process**

Plaintiffs have conducted sufficient investigation and discovery in the Action in order to assess the merits and risks of the proceeding to trial with the claims brought herein, and the adequacy and fairness of this Settlement in light thereof. For example, both parties to this action exchanged Initial Disclosures pursuant to F.R.C.P. Rule 26. Additionally, Plaintiffs in both this action and the related *Sandoval* lawsuit served, and Defendant responded to, written discovery in the form of both Special interrogatories and Requests for Documents. Plaintiffs subsequently met and conferred repeatedly regarding the scope of

Defendant's production and responses and additional information to be provided. In response to this discovery, Defendant produced policy documents, handbooks, wage and hour records, and thousands of pages of class member time records.  Additionally, in support of the Parties' settlement negotiations and mediation session, Defendant provided data and information regarding the average hourly rate of pay for Class Members, the total approximate number of Class Members who worked during the Class Period, the total number of former employees during the Class Period and the total number of workweeks worked by Class Members during the Class Period.  (*See*, Bainer Decl. ¶ 3; Briscoe Decl. ¶ 4)

Additionally, Plaintiffs' Counsel performed an extensive independent investigation into the claims at issue, including (1) determining the suitability of the putative class representatives through interviews, background investigations, and analyses of employment files and related records; (2) researching wage-and-hour class actions involving similar claims; (3) acquiring information regarding putative Class Members' potential claims, identifying additional witnesses, and obtaining documents in support of Plaintiffs' eventual Motion for Class Certification; (4) obtaining and analyzing Defendant's wage-and-hour policies and procedures; (5) researching the latest case law developments bearing on the theories of liability; (6) researching settlements in similar cases; (7) preparing valuation analyses of claims; (8) participating in a full-day private mediation session and preparing related memoranda; (9) negotiating the terms of this Settlement; (10) finalizing the Joint Stipulation of Class Action Settlement and Release; and (11) and drafting preliminary and final approval papers.  The document and data exchanges allowed Plaintiffs' Counsel to assess the strengths and weaknesses of the claims against Defendant and the benefits of the proposed Settlement.  (*See*, Bainer Decl. ¶ 4; Briscoe Decl. ¶ 4)

**C.    The Parties Settled After a Full Day of Arm's Length Negotiations at a Private Mediation**

After exchanging documents and conducting preliminary settlement discussions, the parties attended a mediation with David A. Rotman, Esq., who specializes in mediating employment disputes, including wage and hour class actions.  As a result of the mediation, the parties were able to reach an agreement on the principal terms of settlement. The parties continued to discuss and negotiate the remaining details over the course of several months.  At all times, the Parties' negotiations were adversarial

1   and non-collusive.  The Settlement therefore constitutes a fair, adequate, and reasonable compromise of the

2   claims at issue.  (Bainer Decl. ¶ 5; Briscoe Decl. ¶¶ 9-12.)

3   **D.    The Proposed Settlement Fully Resolves Plaintiff's Claims**

4   **1.    Composition of the Settlement Class**

5   The proposed Settlement Classes consist of two subclasses. The first class consists of means all

6   non-exempt employees of Host International, Inc.  in California at any time from April 25, 2013 through

7   January 29, 2019. The second class, which is a sub-class of the larger class and includes only those class

8   members who were eligible to recover penalties under Cal. Labor Code §§ 226 and 2698 et seq., based on

9   their dates of employment and the applicable statutory period (one year per Cal. Code Civ. Proc., § 340(a)),

10  consist of all non-exempt employees of Host International, Inc.  in California employed at any time from

11  February 6, 2016 through January 29, 2019. (Settlement Agreement ¶¶ 1.4 and 1.23)

12  **2.    Settlement Consideration**

13  Plaintiffs and Defendant have agreed to settle the underlying class claims in exchange for two

14  settlement funds in the amount of $1,500,000 ("Primary Settlement Fund") and $700,000 ("Wage

15  Statement Settlement Fund").  The Primary Settlement Fund includes (1) settlement payments to all Class

16  Members who worked for Defendant between April 25, 2013 through the January 29, 2019,  and who does

17  not opt-out; (2) up to $500,000 in attorneys' fees; (3) reasonable litigation costs and expenses; (4) 70% of

18  the Settlement Administration Costs of $35,000; (5) Class Representative Enhancement Payment of $5000

19  to each of Plaintiffs Joshua Garcia, Sera Garcia, Kelly Smith and Jennifer Wilson; and (6) 70% of the

20  PAGA Payment. (Settlement Agreement ¶1.28) The Wage Statement Settlement Fund includes (1)

21  settlement payments to all Class Members who worked between February 6, 2016 through the January 29,

22  2019 and who does not opt-out; (2) up to $233,333 in attorneys' fees; (3) reasonable litigation costs and

23  expenses; (4) 30% of the Settlement Administration Costs of approximately $35,000; (5) Class

24  Representative Enhancement Payment of $8,000 to Plaintiff Raymond Sandoval; and (6) 30% of the

25  PAGA Payment. (Settlement Agreement ¶1.29) A premium is appropriate for Plaintiffs since they were the

26  lead plaintiffs, actively supported Plaintiffs' Counsel's efforts on behalf of the class and are executing a full

27  release of claims as part of the Settlement Agreement.

28

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Subject to the Court approving Attorneys' Fees and Costs, Settlement Administration Costs, and the Class Representative Enhancement Payments, the Net Settlement Amounts will be distributed to all eligible Class Members who do not opt-out of the settlement.  Because the Class Settlement Amount is non-reversionary, 100% of the Net Settlement Amount, less all employee payroll tax requirements and any other applicable payroll deductions required by law, will be paid to eligible Class Members, and without the need to submit claims for payment.

### 3.  Formula for Calculating Settlement Payments

Each Class Member's share of the Net Settlement Amount will be proportional to the number of weeks he or she worked as a Class Member during the respective Class Period and the Wage Statement Settlement Fund eligible period.  (Settlement Agreement ¶6.2) The Settlement Administrator will calculate Individual Settlement Payments as follows:

- Defendant will provide to the Settlement Administrator each Class Member's name, social security number, last known address, telephone number(s), the total number of Workweeks worked during the class period and the total number of Workweeks worked during the Wage Statement Settlement Fund eligible period.

- To determine each Class Member's estimated Individual Settlement Payment, the Settlement Administrator will divide the Net Settlement Amount by the total number of Workweeks for the both the class period and the Wage Statement Settlement Fund sub-class period, resulting in the Net Settlement Workweek Value for each Fund, and then multiplying the Net Settlement Workweek Value by the number of workweeks worked by each Participating Class Member during the Class Period and Wage Statement Settlement Fund sub-class period, respectively.

- The Individual Settlement Payment will be reduced by any required deductions for each Participating Class Member as specifically set forth herein, including employee-side tax withholdings or deductions. Defendant will pay any employer-side tax payments.

There are 8044 Settlement Class Members, so the average net recovery is expected to be $168.11 and the highest recovery is expected to be $1,041.86.  This average net recovery is significantly higher than many wage and hour class action settlements approved by California state and federal courts.[3]

---

[3]  *See, e.g.*, *Sandoval v. Nissho of Cal., Inc.*, Case No. 37-2009-00091861 (San Diego County Super. Ct.) (average net recovery of approximately $145); *Fukuchi v. Pizza Hut*, Case No. BC302589 (L.A. County Super. Ct.) (average net recovery of approximately $120); *Contreras v. United Food Group, LLC*, Case No. BC389253 (L.A. County Super. Ct.) (average net recovery of approximately $120); *Ressler v. Federated Department Stores, Inc.*, Case No. BC335018 (L.A. County Super. Ct.) (average net recovery of approximately $90); *Doty v. Costco Wholesale Corp.*, Case No. CV05-3241 FMC-JWJx (C.D. Cal. May 14, 2007) (average net recovery of approximately $65); *Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal.)

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 4.    Release by the Settlement Class

In exchange for the Class Settlement Amount, Plaintiffs, and Class Members who do not opt out, will release the Released Claims. The Released Claims are those claims within the applicable statute of limitations period (April 25, 2013 through January 29, 2019) "which have been or could have reasonably been alleged in the Lawsuits against the Released Parties" (Settlement Agreement ¶10.1).

### E.    The Notice and Settlement Administration Process Were Completed Pursuant to the Court Order

As authorized by the Court's Order preliminarily approving the Settlement Agreement, the Parties engaged Rust Consulting, Inc. to provide settlement administration services.  (Pinkus Decl. ¶ 3.) CPT Group' duties have and/or will include:  a) preparing, printing and mailing the Notice of Class Action Settlement (hereinafter referred to as "Notice Packet"); b) performing a search based on the National Change of Address Database to update and correct any known or identifiable address changes; c) taking appropriate steps to trace, update and locate any Class Member whose address or contact information as provided to the Claims Administrator is inaccurate or outdated; d) establishing and maintaining a toll-free case support hotline where Class Members can speak to case representatives regarding case specific questions; e) receiving and providing to Class Counsel, Defendant's counsel, and the Court, copies of Workweek challenges and opt-out requests; f) providing to Class Counsel and Defendant's counsel a weekly report of the progress and completion of tasks identified in the Agreement; g) providing declaration(s) specifying the due diligence the Claims Administrator took with regard to the mailing of the Notice Packet; h) calculating the total number of workweeks for all Class Members and determining their Individual Settlement Payment amounts; i) calculating Defendant's share of payroll taxes, including FICA and FUTA, on the portion of each Individual Settlement Payment allocated to unpaid wages; j) maintaining prior to disbursement all settlement funds in a qualified settlement fund; k) processing, issuing, and mailing Individual Settlement Payments to Participating Class Members in addition to all proper payments to Plaintiffs, Class Counsel, and relevant tax

(average net recovery of approximately $60); *Lim v. Victoria's Secret Stores, Inc.*, Case No. 04CC00213 (Orange County Super. Ct.) (average net recovery of approximately $35); and *Gomez v. Amadeus Salon, Inc.*, Case No. BC392297 (L.A. Super. Ct.) (average net recovery of approximately $20).

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1   authorities; l) issuing to each Participating Class Member a Form W-2 and a Form 1099 for each

2   Individual Settlement Payment; and m) completing any associated tax withholding and reporting to the

3   State and Federal tax authorities. (*Id.*)

4          On February 11, 2019, Rust received the Class Notice prepared jointly by Plaintiffs' Counsel

5   and counsel for Defendants and approved by the Court.  (Pinkus Decl. ¶ 6.)  The Class Notice advised

6   Class Members of their right to submit a request for exclusion from the Settlement, object to the

7   Settlement or do nothing, and the implications of each such action. The Notice Packet advised Class

8   Members of applicable deadlines and other events, including the Final Approval Hearing, and how Class

9   Members could obtain additional information.

10         Separately, counsel for Defendants provided Rust with a mailing list (the "Class List"), which

11  included each Class Member's full name, last known address, Social Security Numbers, and information

12  necessary to calculate payments.  (*Id.* at ¶ 7.)  The mailing addresses contained in the Class List were

13  processed and updated using the National Change of Address Database maintained by the U.S. Postal

14  Service.  (*Id.* at ¶ 8.)  On March 29, 2019, Rust mailed Class Notices to Class Members via First-Class

15  U.S. mail.  (*Id.* at ¶9) Plaintiffs are pleased to report that, to-date not a single Class Member has objected

16  and only three Class Members has requested exclusion from the Settlement.  (*Id.* at ¶¶ 14-15.)

17  **III.    ARGUMENT**

18         **A.    The Standard for Final Approval Has Been Met**

19         A class action may only be settled, dismissed, or compromised with the Court's approval.  Fed.

20  R. Civ. Proc. 23(e).  The process for court approval of a class action settlement is comprised of three

21  principal stages:

22         Preliminary Approval:  The proposed settlement agreement is preliminarily reviewed by the

23  Court for fairness, adequacy, and reasonableness.  If the Court believes the settlement falls within the

24  range of reasonableness, such that proceeding to a formal fairness hearing is warranted, it orders notice

25  of the settlement disseminated to the class.  *See* Manual for Complex Litigation § 21.632 (4th ed. 2004).

26         Class Notice:  Notice of the settlement is disseminated to the class, giving class members an

27  opportunity to object to the settlement's terms or preserve their right to bring an individual action by

28

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1    opting out.  *See id.*, § 21.633.

2        Final Approval:  A formal fairness or final-approval hearing is held by the Court, at which class

3    members can be heard regarding the settlement, and at which evidence and argument concerning the

4    fairness, adequacy, and reasonableness of the settlement is presented.[4]  Following the hearing, the Court

5    decides whether to approve the settlement and enter a final order and judgment.  *See id.*, § 21.634.

6        The first two steps have been the completed.  The Court has preliminarily reviewed the proposed

7    settlement for fairness and found it to be within the range of reasonableness meriting court approval.

8    (*See* December 13, 2018, Order Granting Preliminary Approval of Class Settlement, Dkt. No. 38.)  In

9    addition, the Settlement Administrator has notified Class Members of the proposed settlement and

10    upcoming fairness hearing as directed by the Court.  (*See generally* Pinkus Decl.)  Plaintiffs now ask the

11    Court to grant final approval of the proposed settlement.

12         The decision about whether to approve the proposed settlement is committed to the sound

13    discretion of the trial judge and will not be overturned except upon a strong showing of a clear abuse of

14    discretion.  *Hanlon*, 150 F.3d at 1026-1027.  The Ninth Circuit has set forth a list of non-exclusive

15    factors that a district court should consider in deciding whether to grant final approval, namely: (1) the

16    strength of plaintiff's case, and the risk, expense, complexity, and likely duration of further litigation; (2)

17    the risk of maintaining class action status throughout the trial; (3) the amount offered in settlement; (4)

18    the extent of discovery completed, and the stage of the proceedings; (5) the experience and views of

19    counsel; and (6) the reaction of the class members to the proposed settlement.  *Id.* at 963 (citing *Molski v.*

20    *Gleich*, 318 F.3d 937, 953 (9th Cir. 2003)).

21        These factors, which are discussed below, confirm that the proposed settlement is more than fair,

22    reasonable, and adequate for Class Members.  The settlement provides considerable value; Class

23

24    ────────────
     [4] A proposed class action settlement may be approved if the Court, after allowing absent class members had an
25    opportunity to be heard, finds that the settlement is "fair, reasonable, and adequate."  In making this determination,
     "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a
26    lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product
     of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole,
27    is fair, reasonable and adequate to all concerned."  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir.
     2009) (*quoting Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)); *see also Officers for Justice v.*
28    *Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)  ("voluntary conciliation and settlement are the preferred
     means of dispute resolution.  This is especially true in complex class action litigation . . . .").

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Members need not bear the risk and delay associated with trial proceedings to obtain these benefits; and the settlement has been met with substantial support and no opposition from Class Members.

**B.    The Settlement Was Achieved After Evaluating the Strengths of Plaintiff's Case and the Risks, Expense, Complexity, and Likely Duration of Further Litigation**

Plaintiffs evaluated the claims in light of the risks of continued litigation in order to determine a reasonable range of class relief. Although Plaintiffs believe the class claims are strong, Defendant disputes liability and the appropriateness of class certification (for all purposes other than settlement) and has vigorously defended the action. Plaintiffs recognize that if the litigation had continued, thhe may have encountered significant legal and factual hurdles that could have prevented the Class from obtaining any recovery. To be sure, a number of cases have found wage and hours actions to be especially amenable to class resolution.[5] However, some courts have gone the other way, finding that some of the very claims at issue here—meal period, rest period, and off-the-clock violations—were not suitable for class adjudication because they raised too many individualized issues.[6]

---

[5] *See Brinker Restaurant Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1033 (2012) ("Claims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment . . . The theory of liability – that [the employer] has a uniform policy, and that that policy, measured against wage order requirements, allegedly violates the law - is by its nature a common question eminently suited for class treatment."). Litigation of wage and hour claims on class-wide basis (1) encourages the vigorous enforcement of wage laws (*Smith v. Super. Ct.*, 39 Cal. 4th 77, 82 (2006)); (2) "eliminates the possibility of repetitious litigation" (*Sav-on Drug Stores, Inc. v. Super. Ct. (Rocher)*, 34 Cal. 4th 319, 340 (2004)); (3) affords small claimants a method of obtaining redress (*id.*); (4) "deter[s] and redress[es] alleged wrongdoing" (*Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th 1286, 1298 (2010)); (5) "avoid[s] windfalls to defendants" (*Brinker*, 53 Cal. 4th at 1054); (6) avoids "inconsistent or varying adjudications" (*Aguiar v. Cintas Corp. No. 2*, 144 Cal. App. 4th 121, 129 (2006)); and (7) alleviates the concerns of employees about retaliation (*Gentry v. Super. Ct. (Circuit City Stores)*, 42 Cal. 4th 443, 462-63 (2007); *Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th at 1308). These policies are so strongly favored that "class certifications should not be denied [in wage and hour cases] so long as the absent class members' rights are adequately protected." *Richmond v. Dart Industries, Inc.*, 29 Cal. 3d 462, 474 (1981); *see also Sav-On, supra*, 34 Cal. 4th 319 (upholding certification of an overtime class action based on a showing that all plaintiffs performed jobs that were highly standardized, and as a result, class members performed essentially the same tasks, most of which were non-exempt as a matter of law).

[6] *See Duran v. U.S. Bank National Association*, 59 Cal. 4th 1, 31 (2014) (reversing a verdict from a class trial); *Augustus v. ABM Security Services, Inc.*, 233 Cal. App. 4th 1065 (2014) (finding that the trial court erred in granting summary adjudication and summary judgment to security guards who were on call during rest breaks because neither the Labor Code nor the applicable wage order mandated that employees be relieved of all duties during rest breaks); *Ali v. U.S.A. Cab Ltd.*, 176 Cal. App. 4th 1333, 1341 (2009) (affirming denial of certification because employees' declarations attesting to having taken meal and rest breaks demonstrated that individualized inquiries were required to show harm); *Campbell v. Best Buy Stores, L.P.*, 2013 U.S. Dist. LEXIS 137792, at *30-41 (C.D. Cal. Sept. 20, 2013) (following *Brinker* and denying certification of proposed off-the-clock and rest and meal break classes due to lack of uniform policy); *Jimenez v. Allstate Ins. Co.*, 2012 U.S. Dist. LEXIS 65328 (C.D. Cal. Apr. 18, 2012) (denying motion to certify meal and rest break classes based on employer's practice of understaffing and overworking employees); *Gonzalez v. Officemax N. Am.*, 2012 U.S. Dist. LEXIS 163853 (C.D. Cal. Nov. 5, 2012) (same); *Brown v. Fed. Express Corp.*, 249 F.R.D. 580, 587-88 (C.D. Cal. 2008) (denying

1   Some courts have denied certification even when an employer's policies are unlawful on their face.

2   For instance, in *Ordonez v. Radio Shack, Inc*., 2013 U.S. Dist. LEXIS 7868, *35-41 (C.D. Cal. Jan. 17,

3   2013), the court denied certification even though the plaintiff submitted evidence of a facially unlawful

4   policy regarding rest breaks.  The *Ordonez* court concluded that the predominance and superiority elements

5   were not met based on the employer's presentation of anecdotal evidence of lawful compliance

6   notwithstanding the unlawful policy.  *Id*. at *38-40.

7   As the above examples illustrate, the prospect of certifying a wage and hour action is always

8   uncertain, and the risk of being denied class certification militates in favor of settlement.   A denial of class

9   certification effectively forecloses continued litigation, as neither the individual nor his or her attorney will

10  have any incentive to proceed with an individual case when such small claims are at stake.  *See In re*

11  *Baycol Cases I & II*, 51 Cal. 4th 751, 758 (2011) (explaining that a dismissal of class claims is effectively

12  the "death knell" of the case, despite survival of individual claims).  In other words, for cases where

13  individual damages are relatively small, denial of class certification results in a near-complete loss for

14  Plaintiff as well as no recovery for the employees, who are shut out of the action.  Thus, if the putative

15  Class had not been certified, the value of Plaintiffs' case would have been reduced to a fraction of the value

16  of this Settlement; indeed, Defendant would have likely offered no money to settle the class-wide claims if

17  certification had been denied.

18  In summary, although Plaintiffs and their counsel maintain a strong belief in the underlying merits

19  of the claims, they also acknowledge the significant challenges posed by continued litigation through

20  certification and/or at the merits stage.  Accordingly, when balanced against the risk and expense of

21  continued litigation, the settlement is fair, adequate, and reasonable.  *Linney v. Cellular Alaska P'ship*, 151

22  F.3d 1234, 1242 (9th Cir. 1998) ("the very essence of a settlement is compromise, a yielding of absolutes

23  and an abandoning of highest hopes").

---

certification of driver meal and rest period claims based on the predominance of individual issues); *Kenny v.
Supercuts, Inc*., 252 F.R.D. 641, 645 (N.D. Cal. 2008) (denying certification on meal periods claim); *Blackwell v.
Skywest Airlines, Inc.*, 245 F.R.D. 453, 467-68 (S.D. Cal. 2007) (declining to certify class action because individual
issues predominated when different employee stations provided different practices with respect to meal periods).

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1

**C.    The Settlement Was Reached through Arm's-Length Bargaining in Which All**

2

**Parties Were Represented by Experienced Counsel**

3      As discussed above, the Settlement is result of arm's-length negotiations.  The Parties participated

4  in both a mandatory settlement conference and a private mediation before experienced class action

5  employment mediator David A. Rotman, Esq. Mr. Rotman helped to manage the Parties' expectations and

6  provided a useful, neutral analysis of the issues and risks to both sides.[7]  The Parties were represented by

7  experienced class action counsel throughout the negotiations resulting in this Settlement.  Plaintiffs'

8  Counsel are seasoned in class action litigation and regularly litigate wage and hour claims through

9  certification and on the merits, and have considerable experience settling wage and hour class actions.

10  Defendant was represented by Baker & Hostetler, a nationally respected defense firm.

11

**D.    The Settlement Was Negotiated after Plaintiffs' Counsel Conducted a Thorough**

12

**Investigation of the Factual and Legal Issues**

13      As set forth in greater detail above, based on their analysis of documents produced by Defendants,

14  including a representative sample of time and payroll records and relevant policy and operational

15  documents, as well as information provided by Class Members during interviews, Plaintiffs' Counsel were

16  able to realistically assess the value of Plaintiff's claims and intelligently engage defense counsel in

17  settlement discussions that resulted in the proposed settlement now before the Court.  (Bainer Decl. ¶¶ 3-5.)

18  By engaging in a thorough investigation and evaluation of Plaintiffs' claims, Plaintiffs' Counsel can

19  knowledgeably opine that the Settlement, for the consideration and on the terms set forth in the Settlement

20  Agreement, is fair, reasonable, and adequate, and is in the best interests of Class Members in light of all

21  known facts and circumstances, including the risk of significant delay and uncertainty associated with

22  litigation and various defenses asserted by Defendant.

23

**E.    The Settlement Class Has Responded Positively to the Settlement**

24      The Settlement Class' response demonstrates its support for this settlement—to date not a single

25

---

26  [7] *In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008) (mediator's participation weighs considerably against any inference of a collusive settlement), *In re Atmel Corp. Derivative Litig.*, No. C 06-4592 JF (HRL), 2010 U.S. Dist. LEXIS 145551 (N.D. Cal. June 25, 2008)

27  (same); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure.")  At all

28  times, the Parties' negotiations were adversarial and non-collusive.

1  Class Member has objected to, and only 3 Class members have opted out of, the Settlement.

2  Participating Class Members will share the Net Settlement Amount, and will receive an average

3  payment of $168.11 (Pinkus Decl. ¶14-17.)  A low number of opt outs and objections is a strong

4  indicator that a settlement is fair and reasonable.  *7-Eleven Owners for Fair Franchising v. Southland*

5  *Corp.*, 85 Cal. App. 4th 1135, 1152-53 (2000) (class response favorable where "[a] mere 80 of the 5,454

6  national class members elected to opt out  [(1.5% of the entire Class)] and . . . [a] total of nine

7  members . . . objected to the settlement); *Churchill Village, LLC v. General Electric*, 361 F.3d 566 (9th

8  Cir. 2004) (affirming settlement approval where 45 of approximately 90,000 notified class members

9  objected and 500 opted out).  The Settlement Class' response compares favorably to those cases and

10  warrants final approval.

11      Likewise, the average Class Member recovery of $168.11 compares favorably to other wage and

12  hour class action settlements for similar claims on behalf of non-exempt employees.  *See, e.g., Sandoval*

13  *v. Nissho of Cal., Inc.*, Case No. 37-2009-00091861 (San Diego County Super. Ct.) (average net

14  recovery of approximately $145); *Fukuchi v. Pizza Hut*, Case No. BC302589 (L.A. County Super. Ct.)

15  (average net recovery of approximately $120); *Contreras v. United Food Group, LLC*, Case No.

16  BC389253 (L.A. County Super. Ct.) (average net recovery of approximately $120); *Ressler v. Federated*

17  *Department Stores, Inc.*, Case No. BC335018 (L.A. County Super. Ct.) (average net recovery of

18  approximately $90); *Doty v. Costco Wholesale Corp.*, Case No. CV05-3241 FMC-JWJx (C.D. Cal. May

19  14, 2007) (average net recovery of approximately $65); *Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-

20  02674-JAM-DAD (E.D. Cal.) (average net recovery of approximately $60); *Lim v. Victoria's Secret*

21  *Stores, Inc.*, Case No. 04CC00213 (Orange County Super. Ct.) (average net recovery of approximately

22  $35); and *Gomez v. Amadeus Salon, Inc.*, Case No. BC392297 (L.A. Super. Ct.) (average net recovery of

23  approximately $20).

24      **F.      The Requested Payment to the Settlement Administrator Is Reasonable and**

25          **Should Receive Final Approval**

26      Plaintiff's request final approval of claims administration costs in an amount of $35,000.00.

27  Rust has promptly and properly distributed the Class Notice to all Class Members and completed its

28

duties in accordance with the settlement terms and the Court's preliminary approval Order. (*See generally* Pinkus Decl.) Accordingly, the payment is fair and reasonable and should be accorded final approval along with the rest of the Settlement terms.

**IV.     CONCLUSION**

The Parties have negotiated a fair and reasonable settlement of a case that provides relief that likely would never have been realized but for this class action. Accordingly, final approval of the Settlement should be granted.

Dated: May 2, 2019                              THE BAINER LAW FIRM

By: */s/ Matthew R. Bainer*
      Matthew R. Bainer
      Attorneys for Plaintiffs